## STATE v. ASSMANN.

1. INDICTMENT—VENUE—CLERK OF COURT.—An indictment which charges. that a party as clerk of court received moneys as such officer, and failed to turn them over to his successor within thirty·days, and in the caption

uses the words, "County of Lexington," "Lexington Court House," "in the county and State aforesaid," and in the charging part the words, "then and there," "clerk as aforesaid," "failed to pay over to his successor in office as clerk * * * of Lexington County," sufficiently charges the offense to show that it was committed within the jurisdiction of the court.

2. IBID.—CLERK OF COURT.—An indictment which charges that the defendant, "had and held in his hands" the money "which had been received him * * * as clerk aforesaid," "paid him as clerk as aforesaid, under the proceedings aforesaid," is sufficient to charge him with receiving the money.

3. IBID.—OFFICER.—To charge an officer with failing to perform a duty required of him by law, is tantamount to charging him with neglecting obedience to that requirement.

4. CODE—QUERY.—Does section 304 of Criminal Code contemplate one offense for failing to turn over all moneys in hand, or can a clerk be indicted for every delict in turning over moneys in his hands in individual cases?

5. INDICTMENT—CLERK OF COURT—EVIDENCE.—On trial under indictment for failure to turn over to successor money of a certain estate in his hands as clerk, it is not error to refuse to permit the defendant to testify that he failed to turn over other funds so held.

6. IBID.—IBID.—OFFENSE—CRIMINAL CODE.—The motive and intent are not matters of inquiry on an indictment against a clerk of court, under section 304, Criminal Code, because the offence consists alone in the act of not paying over. Criminal Code, sec. 304, *construed.*

7. CLERK OF COURT.—It is not necessary for the succeeding clerk of court to demand of the outgoing one moneys on hand, as the statute makes all the demand necessary.

8. IBID.—CRIMINAL CODE—OFFENSE.—Section 304 of Criminal Code makes it an offense for a clerk of court to fail to turn over to his successor all moneys at any time previously received by him as such officer, and not legally disbursed. Criminal Code, sec. 304, *construed.*

Before WITHERSPOON, J., Lexington, September, 1895. Affirmed.

Indictment against Wm. J. Assmann, for failure to turn over to his successor as clerk of court certain funds collected by him while clerk. Verdict guilty. Defendant appeals.

*Messrs. Andrew Crawford* and *R. W. Shand,* for appellant.

*Mr. Solicitor Nelson,* contra.

April 21, 1896. The opinion of the Court was delivered by

MR. JUSTICE JONES. The appellant, William J. Assmann, having been clerk of the court for Lexington County, was succeeded in office, December 8th, 1891, by Isaiah Hálti-wanger. While Assmann was clerk, he received, in his official capacity, $1,926.45, in the case of *Ex parte Fort*, *adm'r.*, *in re Boyd* v. *Lee*, which was not turned over to his successor within thirty days after the expiration of his term of office and the qualification of his successor. For this default, he was indicted under section 304, Criminal Statutes, and was tried at the Court of General Sessions for Lexington County, September term, 1895, before his Honor, Judge I. D. Witherspoon, and a jury, convicted, and sentenced to pay a fine of $1,000, and imprisoned in the county jail for three months. The defendant appeals, and alleges that the trial Judge erred in refusing to quash the indictment, in his rulings as to evidence, in his charge, and in his refusals to charge as follows: I. That his Honor erred in refusing to quash the indictment:

(1) Because it does not state that the offense charged was committed in Lexington County. (2) Because it does not allege that the money charged not to have been turned over was ever received by the defendant. (3) Because it does not charge that defendant neglected or refused to turn over moneys in his hands to his successor in office. (4) Because it charges defendant with not turning over to his successor moneys remaining in his hands of one certain estate named, whereas indictment lies only for not turning over all the moneys remaining in his hands as clerk.

II. That his Honor erred in refusing to permit the defendant, when a witness, to testify: (1) Whether or not there were other moneys with which he was chargeable, as clerk of court, that he did not turn over to his successor within thirty days after such successor had qualified. (2) What defendant's credit was in the Carolina National Bank at the time that he collected moneys as clerk of court. (3) With what intent defendant expended moneys which were

in his hands as clerk. (4) What amount of property defendant then owned.

III. That his Honor erred in not charging the jury as requested: (1) That the provisions of the criminal law under which this indictment has been brought, requires a clerk of court, on the qualification of his successor, to surrender all the property of his office other than the money in hand, and within thirty days thereafter to turn over all the moneys remaining in his hands, as clerk, to such successor; but this statute applies only to property and moneys actually in hand, and not to moneys which ought to be in hand but were not, because previously spent or disposed of by him. (2) The jury cannot convict the defendant under this indictment, if they believe that this failure to turn over all moneys, for which he was then responsible, as clerk, was because it was out of his power to do so. (3) That if the jury find that there is no evidence in the case that Haltiwanger, as clerk of court and successor in office to Assmann, as clerk of court, made a demand on said Assmann for the moneys remaining in his hands as clerk in the case named in the indictment, that then the jury cannot convict.

IV. That his Honor erred in charging the jury: (1) "That the matter of motive or intent does not enter into this case. (2) That the charge was, that defendant, when he went out of office, had funds belonging to this Fort estate; * * * that he failed, refused, at the time that he went out of office, or within thirty days thereafter, to pay over to his successor; * * * that the offense consists in the omission or refusal to perform an official duty upon the part of Mr. Assmann—that is, the omission or neglect to pay over this money, or the refusal to pay it over, if it was in his hands, upon demand—refusal implies demand." (3) That "the motive and intent, I must charge you, according to my construction of this statute—right or wrong—does not enter into the question."

Before the jury was sworn, the defendant moved to quash the indictment on the four grounds set out in exception

one above, which motion was refused.　The following is the indictment: ·

The State of South Carolina, County of Lexington.　At a Court of General Sessions, begun und holden in and for the County of Lexington, in the State of South Carolina, at Lexington Court House, in the county and State aforesaid, on the third Monday of September, in the year of our Lord one thousand eight hundred and ninety-five, the jurors of and for the county aforesaid, in the State aforesaid, upon their oath, present: That William J. Assmann, late of the county and State aforesaid, on the first day of April, in the year of our Lord one thousand eight hundred and ninety, and on divers other days since said day, and up to the eighth day of December, in the year of our Lord one thousand eight hundred and ninety-one, with force and arms unlawfully did commit official misconduct, in this, that he, the said William J. Assmann, was duly elected clerk of the court of common pleas and general sessions of Lexington County, at the regular general election in the year 1888, and duly qualified as such within the time required by law, and entered upon and continued to discharge the duties of said office up to and until the eighth day of December, in the year of our Lord one thousand eight hundred and ninety-one, at which time one Isaiah Haltiwanger succeeded him, the said William J. Assmann, as clerk of the court of common pleas and general sessions of the county of Lexington aforesaid, and entered upon the discharge of the duties of said office.　And at that time aforesaid, to wit: on the eighth day of December, in the year of our Lord one thousand eight hundred and ninety-one, the said William J. Assman then and there had and held in his hands a certain sum of money, to wit: the sum of $1,926.45, which had been received him, the said William J. Assmann, as clerk as aforesaid, in proceedings had in a case entitled *Ex parte* E. E. Fort, as administratrix of the estate of Hugh L. Boyd, deceased, *in re* E. E. Boyd, as administratrix as aforesaid, plaintiff, *v.* Mary L. Lee, as executrix, and others,

defendants, which said sum of money the said William J. Assman, upon the succession of him, the said Isaiah Halti-wanger, to the office aforesaid, at the time aforesaid, and within thirty days thereafter, he, the said William J. Assmann, failed to pay over to his successor in office as clerk of the court of common pleas and general sessions of Lexington County, to wit: to the said Isaiah Haltiwanger, the aforesaid sum of $1,926.45, paid him as clerk aforesaid, under the proceedings aforesaid. Against the form of the statute in such case made and provided, and against the peace and dignity of the State. P. H. Nelson, Solicitor.

The first question is, does the indictment allege that the offense was committed in Lexington County? We think it does. "County of Lexington" appears in the margin. In the caption, which, as our courts have declared (*State* v. *Moore*, 24 S. C., 155), ends with the word "present," we find "County of Lexington," at "Lexington Court House," "in the county and State aforesaid," "of and for the county aforesaid." While it is true that the caption is strictly no part of the indictment or charge which defendant is called upon to answer (*State* v. *Williams*, 2 McCord, 301), still it does not follow that the place mentioned in the margin, or in the caption, or in the "commencement" of an indictment, may not be carried forward into the "statement," or charging part of the indictment, by such words as "county aforesaid," "then and there," &c. In Clark's Criminal Procedure, p. 247, it is stated, "Where the county is mentioned in the margin or commencement, or perhaps even in the caption only, it will be sufficient to refer to it afterwards by the words, "in the county aforesaid," or, "then and there," citing 2 Hale, P. C., 180; 2 Hawk., P. C., c. 25, s. 34; *Rex* v. *Burridge*, 3 P. Wms., 496; *Haskins* v. *People*, 16 N.Y., 344; *Barnes* v. *State*, 5 Yerg. (Tenn.), 186; *Strickland* v. *State*, 7 Tex. App., 34; *State* v. *Conley*, 39 Me., 78; *Turns* v. *Com.*, 6 Metc. (Mass.), 224; *State* v. *Ames*, 10 Me., 743; *State* v. *Cotton*, 4 Fost. (N. H.), 143; *State* v. *Slacum*, 8 Blackf.

(Ind.), 315; *Evarts* v. *State*, 48 Ind., 422; *State* v. *Bell*, 3 Ired. (N. C.), 506; *State* v. *Tollener*, 5 Ired. (N. C.), 452; *Nae* v. *People*, 39 Ill., 96; *Haurghan* v. *People*, 91 Ill., 142; *State* v. *Salts* (Iowa), 39 N. W., 167; *State* v. *Reid*, 20 Iowa, 413. An information that did not state in its body the place where the offense was committed was, nevertheless, held sufficient, where the county was mentioned in the caption, and the words of reference 'then and there' were used in charging the crime. *State* v. *S. A. L.*, 77 Wis., 467; 46 N. W., 498." In *State* v. *Moore*, 24 S. C., 155, the case of *Reeves* v. *State*, 20 Ala., 33, was cited. In this last case, on the margin of the indictment, appeared the words, "The State of Alabama, Butler County;" in the body of the indictment it was recited that, "the grand jurors, etc., of the county of *Butler*, upon their oath, present," etc., without repeating again the name of the county, not naming any other county, but charging that the offense was committed "in the county aforesaid." The Court sustained the indictment, holding that, since there was no such county as "Butler," which the Court was bound to know, the words, "in the county aforesaid," must refer to the county stated in the margin. Now, the charge against the defendant was his failure to perform a duty required of him as clerk of the court.

It was alleged in the charging part of the indictment, that William J. Assmann, "late of the county and State aforesaid," was duly elected as clerk of the court of common pleas and general sessions of Lexington County, qualified as such and discharged the duties of said office up to the 8th day of December, 1891, and that on this day Haltiwanger duly succeeded him as clerk, and entered upon the discharge of the duties of the office. Here we have the county stated in the margin, and several times repeated in the caption, carried forward into the charge or statement. Then the Court is bound to know that the place fixed by law for the discharge of the duties required of a clerk of the court is at and in the court house of the county wherein

he is elected. Sec. 779, Rev. Stat., provides, that "every clerk shall, except on public holidays, give constant attendance, either personally or by deputy, in his office, which shall be kept in a room provided for that purpose, in the court house," &c. The furniture, books, and papers of his office are kept at the court house, and there, necessarily, must they be delivered or turned over to the succeeding officer. Furthermore, it is charged that said Assmann, on the 8th day of December, 1891, when he was succeeded in office by Haltiwanger, "then and there," necessarily meaning, "in the county of Lexington," had and held, as clerk, the moneys described, and failed to pay same over to his successor, as clerk of the court for Lexington County, within the time required. Since the statute required the defendant to turn over to his successor, within thirty days, the moneys received by him as clerk of the court for Lexington County, and remaining in his hands as such clerk, if it be conceded, as it must, that the venue is properly charged as to his having and holding moneys at the time he went out of office, which were paid to him as clerk, then it is entirely too refined and technical to say, that the indictment must utterly fail, because the venue is not, in expressed terms, laid also with reference to the "turning over" to the succeeding clerk of the court for Lexington County. The most critical would, doubtless, be satisfied with this indictment on this point, if the words "then and there" had been placed before the word "failed," and we think the meaning and effect of the indictment, taken as a whole, is as if these words were there. The place where the offense was committed has been stated with sufficient particularity to show that it was committed within the jurisdiction of the Court.

The next question raised against the indictment is, that it does not allege that the money was ever received by defendant. The indictment charged that the defendant "had and held in his hands" the money "which had been received him the said, William J. Assmann, as

clerk, as aforesaid," in a certain case, and at the close of
the charging part of the indictment, referring again to the
same money, are these words, "paid him as clerk as afore-
said, under the proceedings aforesaid." If the defendant
*had* and *held* money *paid* him as clerk, he must have re-
ceived it. It is too clear for argument that taking the
indictment as a whole the word "by" was omitted after
"received" by a mere clerical mistake. There is no room
for conjecturing that possibly the indictment meant re-
ceived "*from*" him or "*for*" him. Indeed, the whole clause,
"*which had been received him,*" could have been omitted
from the indictment and still enough been left to sustain
it, however awkwardly expressed—since, if defendant had
and held money that had been paid to him, the money
must necessarily have been received by him. While it is
preferable to follow the words of the statute, equivalent
words are sufficient to support the indictment thereunder.

The third point made against the indictment is, that it
does not charge that defendant *neglected or refused* to
turn over any moneys to his successors. The in-
dictment charged that he *failed* to so turn over the
money. The words of the statute are, after requir-
ing the officer to turn over the money to his successor
within thirty days, "any public officer neglecting or refus-
ing obedience to the requisition herein contained, &c." It
seems very clear, that to charge an officer with *failure* to
perform a duty required of him by law, is tantamount to
charging him with *neglecting obedience* to that require-
ment. Neglect, in the sense of this statute, is a failure to
do what is required. The indictment is, therefore, in
equivalent words of the statute.

The last point of attack against the indictment is, that it
should have charged neglect or refusal to turn over *all
moneys* in his hands, whereas it charged failure to turn over
the money of one particular estate. To use the keen lan-
guage of appellant's counsel: "To this it may be said, that
if he failed to turn over a portion of the funds in his

hands, he necessarily failed to turn over all." Then, if it may be asked, "whether a conviction or acquittal for not turning over the moneys of A, will bar an indictment for not turning over the moneys of B," the inquiry "may be answered by saying, that that point will be decided when the second indictment is found." We vindicate the sagacity of appellant's counsel by adopting the argument suggested for the Court. We will say, however, that we have been strongly impressed with the argument that the statute is one, contemplates one offense, and punishes one offense, not turning over the moneys in his hands.

In overruling the appellant's exception to the form of the indictment, we are not unmindful of the provision in the Constitution of 1868, under which defendant was tried, providing that "No person shall be held to answer for any crime or offense until the same is fully, fairly, plainly, substantially, and formally described to him." We bear in mind, also, the act of 1887, which provides that "every indictment shall be deemed and adjudged sufficient and good in law, which, in addition to allegation as to time and place as now required by law, charges the crime substantially in the language of the common law, or of the statute prohibiting the same, or so plainly that the nature of the offense charged, "may be easily understood, &c.," and the construction placed upon this act in the case of *State* v. *Blakeney*, 33 S. C., 111, affirmed in *State* v. *Faile*, 43 S. C., 56, that it does not dispense with *essential allegations*. We recognize the statutory rule of the common law, that the crime charged must be expressed with reasonable precision, directness, and fullness. But we think the requirements as to certainty is fully met in this indictment, and that the prisoner was fully apprised of the charge he was called upon to answer.

From the conclusion reached above, that the indictment is sustainable, although it alleges failure to turn over money received in a particular estate, it follows that the Circuit Judge committed no error harmful to the defendant by refusing to allow him to introduce evi-

dence of his delinquency in turning over to his successor other money in his hands as clerk, which is the subject matter of subdivision 1 of exception 2. It would be strange, indeed, if a prisoner could successfully defend himself against a charge of crime by, in effect, confessing it.

We next consider the fourth exception, imputing error in the charge of the Circuit Judge, to the effect that the offense charged consists in the omission or refusal to perform an official duty, and that the motive and intent of the defendant does not enter into the case. If this charge is correct, then it is wholly irrelevant what was the defendant's credit in the Carolina National Bank at the time he collected money as clerk, what amount of property he then owned, and with what intent he expended moneys which were in his hands as clerk, and thus subdivisions 1, 2, and 3 of exception 2 may be disposed of. We think there was no error in the charge. The case of *State v. Reeder*, 36 S. C., 502, settles the principle which must control this question. In this case Reeder held a junior mortgage or lien on the crops of a tenant, and, acting under the advice of counsel, seized and sold a portion of the tenant's crop, and did not apply the proceeds to a senior lien, of which he had notice. He was indicted and convicted under sec. 2515, General Statutes (sec. 277, Criminal Statutes), which makes it a misdemeanor to sell or dispose of property under a lien, of which he has notice, without the written consent of the lienee or mortgagee, unless he pays the debt secured by the senior lien within ten days thereafter, or within the same time deposit the amount of the debt with the clerk of the court of the county in which the lien debtor resides. In this case Judge Hudson charged the jury, that "the motive and intent is not a matter of inquiry, &c." This charge was sustained. Chief Justice McIver, speaking for the Court, said: "This statute, unlike many other penal statutes, contains no language implying that the act forbidden must be done willfully or maliciously, or with intent to defraud, in order to make it criminal, but it simply for-

bids the doing of a certain act, without any words of quali-
fication whatsoever, and, in the absence of any such word,
the Court has no power to supply them." So, under the
statute under consideration in the case at bar, the act made
punishable is the neglect or refusal to turn over moneys in
hand to the successor in office within a specified time, with-
out any words of qualification whatever, and we have no
power to add by construction what the Legislature has not
seen fit to declare. It cannot, therefore, matter, except
where executive clemency is sought, what motive and in-
tent actuated the conduct which made compliance with this
statute impossible. An officer charged with the custody of
money, and required by law to do a certain act in reference
to it, under pain of punishment, cannot excuse himself from
the criminality of his act in neglecting to do this thing, on
the plea that his own conduct has made it impossible for
him to perform his duty.

This also disposes of subdivision 2 of exception 3,
and it remains only to consider subdivisions 1 and 3 of ex-
ception 2.

It is, we think, wholly unnecessary to prove a demand by
the succeeding officer on the outgoing officer for the money
in his hands, before a conviction can be had for failing
or neglecting to turn over said money. The statute
does not require such demand to be made. The stat-
ute itself makes all the demand necessary, by commanding
the performance of a particular thing within a specified time.

The last exception to be noticed is, substantially, that his
Honor erred in not charging the jury, that this statute applies
only to money actually in hand, and not to moneys
which ought to be in hand but were not, because pre-
viously spent or disposed of. We have carefully con-
sidered the earnest and ingenious argument of appellant's
counsel on this point, but we can not accept the construction
of the statute for which they contend. The statute is de-
signed to secure the faithful custody of funds in the hands of
officials and the prompt turning of the same over to succes-

sors in office. It would be rendered wholly nugatory, if the prosecuting officers were compelled to prove in every case what money actually remained in the officer's hands. It would, in fact, be an impossible task. The money may have been given to members of the officer's family, or lost in speculation, paid out on his private debts, squandered in a hundred ways, or secreted in many places. How could the State ever show what actually remained in his hands as an individual? But it is quite possible to show what money an officer receives as an officer and disburses as an officer. It could be shown what money he ought to have in his hands as an officer. In the sense of this statute, as well as in common sense, money remains in the hands of an officer who has received and has not legally disbursed it. Otherwise, the more careless, wasteful or dishonest an officer is in handling such funds, the more securely is he protected from this statute, designed to compel the safe custody of trust funds. The Legislature could not have intended to make criminal an act incapable of proof, except by the defendant himself, which the construction contended for by appellant's counsel would imply. It is far better to leave to executive mercy, real cases of hardship, that might be supposed or conceived, rather than by attempting to meet those cases by the construction contended for, to nullify the law by making it impossible ever to convict on this statute.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.