14824

STATE v. MARYLAND CASUALTY CO. *ET AL.*

(1 S. E. (2d), 516)

406

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorneys General,* for appellant-respondent, State of South Carolina and *R. E. Babb and John F. Clarkson,* for appellant-respondent, Newberry County,

*Messrs. Haynesworth & Haynesworth,* for appellant, Maryland Casualty Co.,

*Messrs. Blease & Griffith,* for appellant, Mrs. Myrtle D. Schumpert, Administratrix.

February 27, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This action has been pending for quite a number of years, having been commenced in January, 1930, but reached this Court for the first time in January, 1939.

It grows out of the following facts:

Claude C. Schumpert was duly appointed treasurer of Newberry County, and on June 9, 1925, executed a bond in the penal sum of $20,000.00 with defendant-appellant, Maryland Casualty Company, as surety, whereby said appellant bound itself to become responsible for and guarantee that the said Schumpert would well and truly perform the duties of said office, as then and thereafter required by law, during the period he continued in office, and thereby bound itself to make good any default on the part of Schum-

pert, as treasurer of Newberry County, to the extent of the penalty of the bond.

Schumpert continued in office until June 30, 1929, when he turned over said office to his successor in office and delivered to him $16,674.43, which is the exact amount found to be due the State of South Carolina for taxes collected but not remitted, and the entire amount of the State's taxes had been collected on or prior to May 1, 1929. The record does not disclose if this money was paid by Schumpert to his successor in cash or was transferred by check; the record shows, however, that this amount was deposited by the successor of Mr. Schumpert in a Newberry County bank, and lost by reason of the insolvency and closing of the bank. Schumpert, as treasurer, was short in his accounts with the county of Newberry in the sum of $7,014.92. He did not so keep his books as to show what funds he had on hand belonging to the State, and what funds he had belonging to the county, nor did he keep the funds of the State and county separate in his bank account, as treasurer.

We think it is due the memory of Mr. Schumpert to here record that he died in August, 1929, which was several months before the commencement of this action and while he was in office, from audits made of his accounts, exhorbitant claims were made against him for moneys alleged to have been received by him in his official capacity, but this proceeding has established that he had on hand all funds due either the county or the State except the sum as aforesaid of $7,014.92, and such amount of shortage was established after his mouth had been closed by death. It may be, and we prefer to so think, that this shortage came about through poor bookkeeping. Be that as it may, the case comes to us, in which it is an established fact that it would have required $7,014.92 additional for Mr. Schumpert to have accounted in full to both the State and the county for funds coming into his possession for which he had not accounted.

In 1932, on petition of Mrs. Myrtle D. Schumpert, as Administratrix of the estate of Claude C. Schumpert, deceased, she was made a party defendant.

The complaint in the action alleges that Mr. Schumpert, as treasurer of Newberry County, failed, neglected and refused to account for the moneys coming into his hands in accordance with law and that he negligently and carelessly performed the duties of his office to the great injury and damage of the State of South Carolina, and judgment was sought for the full penal amount of the bond.

The case was referred, and upon the reference, the county of .Newberry joined in the prosecution of the case. This was of course permissible in that the bond inures to the benefit of anyone aggrieved by its breach, if established.

The order of judgment from which this appeal is taken was in favor of the State of South Carolina in the amount of $16,674.43, and that Newberry County had failed to establish any claim, this finding as to Newberry County having been based upon the fact that Mr. Schumpert turned over to his successor $16,674.43, which was $9,-659.51 more than the amount due Newberry County; and the order gave leave to the defendants-appellants to file supplemental answers for the purpose of setting up a counterclaim against Newberry County in said last mentioned amount. Both plaintiff and defendants have appealed.

We will first consider the judgment of the State.

Section 2800, Code of 1932, which was Section 499. Vol. 3, Civil Code of 1922, provides: "Every county treasurer shall, on the first and fifteenth days of each month, forward to the State treasurer all the moneys collected by him for or on account of the State taxes, * * *."

There are also penal statutes dealing with county treasurers who neglect to pay over to the (State) treasurer amounts in his hands belonging to the State as required by law.

Section 3069, Code of 1932 (Sections 756, Civil Code of 1922), provides: "It shall be the duty of every * * * county treasurer and any other State or county officer entrusted with funds by virtue of his office, upon his retiring from office to turn over to his successor all moneys received by him as such officer, and remaining in his hands as such officer, within thirty days from the time when the successor shall have entered upon the duties of his office, in the same manner as he is required by law to turn over the furniture, books and papers; and the successor shall receive and be responsible for the moneys so turned over to him, in the same manner as he is liable for other moneys received by him officially. * * *"

There is also a penal statute dealing with county treasurers who neglect to pay over to their successors in office amounts in hand which have been collected as treasurer.

Unquestionably the failure of Mr. Schumpert to obey the positive direction of Section 2800 (Section 499, Vol. 3, Civil Code of 1922) in respect to remitting to the State treasurer on the 1st and 15th days of each month all moneys collected by him for or on account of State taxes, constituted a breach of his official bond.

In *County of Richland v. Surety Company*, 92 S. C., 329, 335, 75 S. E., 549, 551, Mr. Justice Hydrick, in writing the opinion of the Court, stated as follows: "It is perfectly immaterial whether we say that the failure on the part of a public official to obey the positive mandate of the statutes is negligence *per se* or not. It is that and more; but it is enough to say that it is a violation of the law and misfeasance in office. No officer of the law should be allowed to violate the laws enacted for his guidance, without being held responsible for injurious consequences. Nor can his bondsmen escape, because, on the premise stated, it cannot be said that he has well and truly performed the duties of his office, as required by law. *State v. Moses*, 18 S. C.

[366], 372; *State v. Assmann,* 46 S. C. [554], 562, 24 S. E., 673."

In the above case the surety company, as did the defendants-appellants in the instant case, took the position that unless the officer's violation of the law was the proximate cause of the loss or damage, there could be no recovery against the surety. In passing upon that issue in the Richland County case, this Court stated:

" * * * Ordinarily, the question of the proximate cause is for the jury. But, when the evidence is susceptible of only one reasonable inference, it is for the Court. In this case, reasonable men could not differ.

"But, moreover, when a public officer pays out public funds without compliance with the terms of a mandatory statute, the laws will presume that his act is the direct cause of the loss of such funds, and the burden is upon him to rebut the presumption, and prove that, notwithstanding his violation of the law, no loss resulted. Analogous in principle is the holding that, when a statute, requiring signals to be given by railroad engines approaching highway crossings, is violated, and injury results, it will be presumed it was caused by the failure to give the signals. On the first appeal in this case, it was held that, if an officer so negligently discharges the duties of his office that loss results, his bond is liable. [*County of Richland v. Owens*], 86 S. C. [545], 571, 68 S. E., 753.

"The doctrine of an independent intervening cause, in the criminal act of C. M. Douglas, in issuing warrants to pay the forged claims cannot avail the defendants. Where an injury results from concurring causes, he who originates one of them is as responsible as if it had been the sole cause. When the defendant, Owens, left warrant signed in blank with Douglas, he originated one of the concurring causes of the loss by means of the forged claims."

While Section 3069 of the Code had reference to all moneys in the hands of outgoing treasurers, yet the presumption is that the outgoing treasurer had per-

formed his duties, especially those made mandatory by another statute, and that he would have in hand of State's money only that collected within 15 days prior to his going out of office. Of course, had there been no loss, although Mr. Schumpert had not complied with the mandatory provisions of Section 2800 of the Code and although the condition of the bond would have been breached, there would not have been any resultant damage, and the State would have had no cause of action. In the case at bar, as in the *Richland County case,* it is argued that there was an independent intervening cause for loss of this money in that the successor to Mr. Schumpert deposited these funds in a Newberry bank, which bank was insolvent and closed its doors, and but for such act on his part no loss would have occurred. However, it is too obvious to require discussion that if Mr. Schumpert had complied with Section 2800 of the Code, the State would have lost nothing, and his negligence in failing to transmit the State's money in accordance with the provisions of the statute, was at least a concurring cause. If any portion of this money turned over by Mr. Schumpert to his successor had come into his hands at any time after June 15, 1929, his bond would not have been responsible for such portion of said moneys.

Again defendants-appellants argue that by reason of the grossly unjust and excessive demands made upon the outgoing treasurer by the State and county he was justified in not remitting any moneys to the State treasurer and in holding all money on hand to be turned over to his successor in office.

If the treasurer had well and truly performed his duties as required by law he would have kept his accounts separate at all times and he would have known the amount he was due the State and the amount he was due the county, and regardless of the claims made on behalf of either the State or county; if he had remitted to the State such amount

as he had collected for and on its behalf, then he would have fully complied with his duties.

The judgment of the State is therefore affirmed.

A different situation arises as to the County of Newberry, and it appears to us that the trial Judge has reached a correct conclusion in refusing to render a judgment against defendants-appellants in favor of the county.

The record, insofar as the facts of the case are concerned, consists of the report of the Special Referee and the order of the trial Judge. There is no statute quiring that the funds belonging to the county shall be paid over to anyone, and, of course, this means that the county's funds shall be kept by the treasurer and paid out only as is necessary in the conduct of the county's business. The Referee and the Circuit Judge found that Mr. Schumpert should have had in hand of county's funds the sum of $7,-014.92, and under Section 3069 of the Code, he would have necessarily turned these funds over to his successor in officer. Both the Referee and the trial Judge found as a fact that Mr. Schumpert turned over to his successor in office $16,674.43. It nowhere appears that this amount was delivered to his successor as and for the State. but it was simply turned over to the succeeding treasurer, and was by him deposited in Newberry banks. If the claim of the County is for breach of duty in failing to turn over funds belonging to the county to his successor in office, then it appears conclusively that funds largely in excess of those in his hands belonging to the County, were actually turned over; and such funds not having been earmarked, we can reach no other conclusion than that arrived at by the trial Judge in reference to the county's claim.

We are unable to find any authority for permitting the defendants-appellants to file supplemental answers and set up a counterclaim against Newberry County, a political sub-division of the State, and we note with pleasure that counsel for the administratrix, defendant-appellant,

414

frankly concede that Newberry County cannot be sued without its consent, other than suits permitted by the statutory law of the State. The pleadings raise only the questions: Did the State suffer any damage on account of the breach of duty of Treasurer Schumpert in his conduct of the office of treasurer of Newberry County; and did Newberry County suffer any loss by reason of the conduct of this office?

As to these two questions, in our opinion, they have been correctly answered by the order of the trial Judge granting judgment in favor of the State in the amount aforementioned, and in holding that the County of Newberry failed to establish that it suffered any loss.

The judgment and order appealed from, except as to so much thereof as undertook to allow defendants-appellants to set up a counterclaim for the difference between the shortage of Treasurer Schumpert and the amount of money paid over by him to his successor in office, is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.