12795

STATE v. PLATT *ET AL.*

(151 S. E., 206)

2

Reversed and remanded.

*Messrs. W. F. Stackhouse* and *A. F. Woods,* for appellant,

*Solicitor L. M. Gasque* and *Messrs. Lide & McCandlish* and *Henry Mullins,* for respondent,

January 3, 1930.

The opinion of the Court was delivered by Mr. Justice Blease.

The appellant, Robert Platt, together with Robert Harrelson and Earnest Jones, was indicted and tried in the Court of General Session for Marion County, before Honorable T. S. Sease, presiding Judge, and a jury, for murder. Platt and Jones were found guilty, with a recommendation to mercy. Harrelson was convicted of manslaughter.

The exceptions are numerous, but, on account of the view entertained by the Court, we do not deem it necessary at this time to pass upon any of the questions raised, except the two which are discussed.

The defendants were arraigned for trial on Monday, September 24, 1928. The appellant, Platt, by his counsel, demanded "three days sight of the indictment," and tendered the proper fees for a copy of the same. The position was taken that the appellant could not be put to trial before Friday morning, and objection was made to the trial being entered into prior to that day. The Court overruled that position and set the case for trial on Thursday morning. Soon after the arraignment, on Monday, a proper copy of the indictment was served on the appellant. On Thursday morning, September 27, 1928, over appellant's objection, the case was peremptorily called for trial, and the trial was entered upon. The appellant has excepted to the rulings and holdings of the Court in this regard.

The right of a person indicted for a capital offense to have a copy of the indictment for a certain number of days prior to his trial is now regulated by Section 69 of Chapter 4 of the Code of Criminal Procedure, Volume 1, Code of 1922, which section is as follows:

"Whoever shall be accused and indicted for any capital offense whatsoever shall have a true copy of the whole indictment, but not the names of the witnesses, delivered to him three days, at least before he shall be tried for the same, whereby to enable him to advise with counsel thereupon, his attorney or attorneys, agent or agents, or any of them requiring the same, and paying the officer his usual fees for the copy of every such indictment."

In the case of the *State v. Briggs,* 1 Brev., 8, decided in 1794, it was held:

"The three days allowed a prisoner to prepare for his defense, on an indictment for felony, are inclusive of the day

on which the motion is made for a copy of the indictment."
Syllabus.

In that case, the prisoner, who was charged with horse
stealing, was put to the bar and arraigned on Thursday. He
demanded a copy of his indictment and three days' time to
prepare for trial. "Being brought up again on the Monday
following, his counsel objected to his being tried, insisting
that the three days allowed by law were not expired; for that
he was entitled to three days, exclusive, and that Sunday ought
not to be reckoned, not being a judicial day." Mr. Justice
Waties, speaking for the Court, in a few words, decided
against the prisoner's contention, and we quote his brief
opinion in full:

"The rule with respect to time is to include the day on
which the motion is made. The computation of time must
commence from the time when the motion was made. The
whole day must be included, because there can be no frac-
tions of a day."

Since the decision in the *Briggs case,* the practice in this
State, so far as we are advised, has followed consistently the
holding there made, and no question as to the correctness of
that holding was raised until the case of the *State v. Wright,*
140 S. C., 363, 138 S. E., 828, 830, was heard.

In *Wright's case,* the prisoner, who was charged with
murder, was arraigned on Monday, November 8, 1926. No
demand was made at that time for a copy of the indictment,
and there was no tender of the usual fees for such copy. A
motion for a continuance beyond the term was entered by
the defendant, and argument had thereupon. The decision of
the Judge on that matter was reserved until the following day,
Tuesday. At the time set for disposing of this motion, No-
vember 9th, the motion for the continuance was refused, and
the case was set for trial for Thursday morning, November
11th. Thereupon counsel for the appellant objected, stating
that they had not had three days' sight of the indictment, and
announced they would not be ready for trial as soon as the

date fixed. On Thursday morning, when the case was called for trial, the same objection was interposed, but the Judge held that the defendant had been arraigned for three days, that he had been given three days' sight of the indictment, and the case proceeded to trial. The defendant was convicted of manslaughter and appealed to this Court, raising several questions, including the one referred to. The judgment below was affirmed. The Chief Justice wrote the opinion, in which Mr. Justice Carter fully concurred. As to the point under consideration, the Chief Justice said:

"The second exception is overruled, as defendant had his three days. The record shows that the defendant did not demand three days' sight of the indictment on the day that he was arraigned, and that he did not demand this until the 9th day of November, 1926, or the day after his arraignment."

And he further said:

"It does not appear in the statement of the case that the defendant ever tendered the officer his usual fees for a copy of the indictment, nor was this done, and the provision of the statute is positive in this for it reads as follows (Section 69, Code of Criminal Procedure [Volume 1, Code of Laws of South Carolina, 1922])."

The holding of the Chief Justice was based mainly upon the case of *State v. Briggs, supra.*

Mr. Justice Cothran wrote a concurring opinion in the *Wright case,* and in that Mr. Justice Stabler and the writer of this opinion concurred. In that concurring opinion Mr. Justice Cothran said:

"I think that the arraignment was complete on Monday, November 8th, after defendant had entered his plea of 'not guilty.' ".

He further said:

"The ruling in *State v. Briggs,* 1 Brev., 8, that the day of the demand must be included in the computation of the three days, is contrary to my conception of the general rule that the first day must be excluded. I reserve my opinion upon

the question whether the defendant is not entitled under Section 69 of the Criminal Code of Procedure, to full three days between the day of arraignment and the day of trial."

It is quite likely that the position taken by the counsel for the appellant in the case at bar was suggested by the concurring opinion in the *Wright case*. We are glad that the question has been squarely presented to this Court for determination, since it is one of grave importance in the matter of procedure in the trial of cases in which defendants are charged with capital offenses. Speaking for himself, the writer of this opinion states frankly that he was always worried, in his practice in the Court of General Sessions, as to the decision in the *Briggs case,* but he accepted it without making any examination as to the law on the subject there involved. So, when the matter was somewhat touched upon in the *Wright case,* not having time then to make an investigation, he thought wise to join in the concurring opinion of Mr. Justice Cothran.

The precise question before the Court now for determination relates to the proper manner of computing the "three days" allowed one "accused and indicted for any capital offense" before he may be tried for the crime charged, after delivery to him of " a true copy of the whole indictment." The proper answer to that inquiry will determine the question raised in the case at bar; namely, if there was error on the part of the trial Judge in forcing the appellant to trial on Thursday when he was arraigned on Monday preceding, and a copy of the indictment delivered to him on that day.

Without doubt, if the holding made in the *Briggs case* is good at this time, the answer to the question under consideration must be against the position of the appellant.

So far as we are able, after some research, to ascertain, the statute which the Court construed in the *Briggs case* was Act No. 530 of the year 1731 (3 St. at Large, p. 274), enacted when South Carolina was a province of the Kingdom of Great Britain. The legislation related to numerous things

pertaining to the trial of persons charged with crime, and other matters not even connected with such trials, and was passed subject to the approval of "His Majesty, the King." There have been some amendments thereto from time to time. The language of our present law (Section 69, Code of Criminal Procedure), with respect to the matter under consideration, is almost word for word with the language of the original enactment. The old law provided that persons accused and indicted for "felony or other capital offense" should have delivered to them, "three days, at least, before he shall be tryed for the same," a true copy of the whole indictment.

In seeking the reasoning of the Court for the holding in the *Briggs case,* we must remember that at the time of that decision our present statute as to computation of time, Section 759 of the Code of Civil Procedure, Volume 1, Code of 1922, was not of force, since it was not enacted until 1870. We are not advised of any statute existing in that day which regulated the computation of time. For a long time prior to the adoption of the general rule for the computation of time, as expressed in our Code, there was much confusion about that matter. Mr. Justice Glover seems to have been so much impressed with this confusion that he called attention to the remark of Lord Mansfield, "that much more subtlety than argument has been used to mark a difference in reference to time." *Manning v. Dove,* 10 Rich., 395, decided in 1857. Some of this confusion will be evident by an examination into old cases, decided both in England and America, including some of our own decisions, prior to the passage of the now very general Code provision referred to.

In the *Briggs case,* the counsel for the prisoner evidently laid great stress upon the point that "Sunday ought not to be reckoned," but in the opinion of the Court that point was not touched upon. Doubtless it was thought unnecessary to pass upon it, for the reason that it was considered that the prisoner had his three days without the inclusion of Sunday. The Court regarded Thursday, the day on which the arraignment was

had, Friday, and Saturday as constituting the three days allowed under the statute.

The words in our statute to which counsel for the appellant have particularly called our attention are "at least." The argument is that "three days, at least," mean that the defendant was entitled to three clear days between the day of the arraignment and the day of the trial. The insertion of the expression "at least" would at first seem to demand the construction insisted upon by the appellant, and would indicate that the decision in the *Briggs case* was erroneous. Perhaps the rule in England many years ago that the phrase "at least" meant that both termini were to be excluded in the counting of time, strictly followed by our Court, would have demanded a contrary opinion in the *Briggs case,* but English Courts themselves, as well as the Courts in America, were evidently trying to get away from the early English decisions. See 28 A. & E. Encyclopedia of Law (2d Ed.), 221.

"On principle it would seem that 'three days' means the same as 'at least three days,' and it is held in most jurisdictions in the United States that where 'at least' or 'not less than' is added, the *terminus a quo* will be excluded, and the *terminus ad quem* included, in accordance with the usual rule." 28 A. & E. Encyclopedia of Law (2d Ed.), 220.

Under the authority last mentioned, it would appear that the words "at least" may be, and properly should be, disregarded, and it seems obvious that the Court did disregard them in the *Briggs case.*

For some other reasons we are inclined to uphold the *Briggs* decision. The case was decided more than a century and a quarter ago. The purpose of the legislation of 1731, allowing three days to the prisoner, was not only to keep him from being unduly hurried to trial, but to give him plenty of opportunity for examination of the indictment against him. The indictments of those days were long, tedious, and elaborate, and in handwriting. They were subject to all kinds of motions and questioning. They were nothing like our indictments of

recent years in homicide cases, where we use printed blanks which are short and to the point, and against which so few objections may now be made.

For over a century, the practice in this State has followed the rule of the *Briggs case*. The General Assembly permitted the words "three days, at least," to remain in the law, just as they were originally enacted, every time the Act was amended, and every time our laws were revised and codified. It must be assumed that the legislators were fully aware of the holding of the Court in the *Briggs case*. If they did not approve of that holding, they had the opportunity time after time to so declare by using language other than the expression "three days, at least," in the statute. The construction adopted by the Legislature of one of its enactments is entitled to great consideration at the hands of the Court.

Counsel for the appellant argue that the decision in the *Briggs case* is in direct conflict with other and later holdings of our Court, particularly those in the case of *Williams v. Halford*, 67 S. C., 296, 45 S. E., 207 ; *Paul v. Southern Railway Co.*, 50 S. C., 23, 27 S. E., 526, and *Adkins v. Moore*, 43 S. C., 173, 20 S. E., 985. And we are forced, in frankness, in some respects, to so concede.

In the *Williams case*, where the notice required for taking of testimony *de bene esse* was under consideration, the Court held that the taking of such testimony on November 20th was improperly done when the notice was served on November 10th. The Court held that the adverse party was entitled to full ten days, excluding in the count, it appears, both the day of service and the day of the act of taking the deposition.

*Paul v. Southern Railway Co.* related to the service of a summons and complaint and trial in the Court of magistrate, in which the debt involved was the sum of $15. The summons was served on July 9th, and the defendant was required to appear for trial on July 14th. The Court held the defendant had not been given sufficient notice, because the statute (now

subdivision 16 of Section 230, Code of Civil Procedure), required that the complaint should be served on the defendant "not less than five days before the day therein fixed for trial." It would appear that the decision was to the effect that, in computing the time, both the day of service and the day of the trial had to be excluded. In line with that decision was the holding in *Adkins v. Moore, supra.*

We are confronted, however, with this situation: The decision in the *Briggs case,* rendered more than 100 years ago, in a very important matter of practice in the Court of General Sessions, has never been overruled or changed in any particular. That holding has been consistently followed through all these years in the Court of General Sessions, and, as pointed out before, has had the approval of our lawmaking body for all this time. The decisions which seem to conflict with it came many years afterward, and touched the practice in the Courts of magistrate and the Court of Common Pleas. There was no reference whatever in any of the later cases to the *Briggs case,* and it is quite obvious that, in the decisions of those cases, the Court did not have in mind in any manner overruling or questioning the *Briggs* decision as to a matter of practice in the criminal Courts. We do not think the conflicts pointed out, if they are really conflicts, are sufficient justification to overthrow a decision of our Court, which has stood unchallenged for such a long time.

"Where a question has been decided expressly in an earlier case which has never been modified or questioned, the mere fact that the reasoning of the few later cases involving somewhat similar but really different questions seems to indicate a change of view affords no justification for a departure from the rule laid down in the earlier decision." 15 C. J., 955. See also *Herndon v. Moore,* 18 S. C., 339, and *Schumpert v. Smith,* 18 S. C., 358.

Furthermore, as we view the matter, the holding of the Circuit Judge in the case at bar can, and should, be upheld under the usual rule of computing time, as

now generally recognized, and in accord with Section 759 of the Code of Civil Procedure, without any regard to the *Briggs* decision. Disregarding, as we think we should do, the words "at least," the statute (Section 69, Code of Crim. Pro.) permits a defendant "three days" after service of a copy of the indictment before his trial. Following the usual rule of computation, we would exclude the first day and include the last. The result here would be to exclude Monday and include Thursday. So counting, the defendant had Tuesday, Wednesday, and Thursday.

For the reasons indicated, we are unable to find any error in the holding of the presiding Judge in this matter, as alleged by the appellant.

The other question raised by the appellant is just as important as the one we have already considered, and we really think it more serious. The indictment found by the grand jury charged that the defendants "* * * at Marion, in the County of Marion, and State of South Carolina, in and upon one John B. Porter feloniously, willfully and of their malice aforethought, did make an assault, and that the said Robert Platt, Robert Harrelson and Ernest Jones him the said John B. Porter then and there feloniously, willfully and of their malice aforethought with a spark plug wrench did hit, strike, bruise and wound; giving to the said John B. Porter thereby in and upon the body of him the said John B. Porter one mortal wound; of which said mortal wound the said John B. Porter then and there died."

It is plain that the assault charged was alleged to have occurred in Marion County. It is equally plain that the death of the deceased was alleged to have occurred in Marion County, for the allegation as to the time and place of death was that the deceased "then and there died." The words "then and there" referred back to the time and place of the assault, and the assault occurred, so the indictment alleged, in Marion County. See *State v. Blakeney*, 33 S. C.,

111, 11 S. E., 637, *infra; State v. Stewart,* 26 S. C., 125, 1 S. E., 468.

The uncontradicted proof was that Mr. Porter, the deceased, died in Florence County.

At the close of the evidence in chief for the State, the appellant's counsel called the attention of the Court to the variance as to the allegation in the indictment of the place of death and the proof on trial as to that place, and they moved for a directed verdict of not guilty on behalf of the appellant, on the ground that the proof did not sustain the allegations of the indictment, for the reason mentioned.

In justice to the presiding Judge, we set out his remarks at the time he refused the motion for the directed verdict, which were as follows:

"It would have been highly proper to have alleged that death occurred in Florence County in this indictment, and I think it is a pretty serious matter. As counsel says, you must bring it within the statute under which you are proceeding. Before that time it was nebulous as to where you could try it before that statute. I won't take the responsibility of directing a verdict. I will let the Supreme Court pass on it. If necessary, I will allow an amendment, if a motion is made, so as to protect the defendant, if he is acquitted here. I think it is of such nature that I in my discretion may allow an amendment to that effect."

Following the suggestion of Judge Sease, the solicitor moved to amend the indictment, so as to allege the death of the deceased in the county of Florence, which motion was granted, over the objection of the appellant.

The appellant excepts to both the refusal to grant his motion for a directed verdict and the granting of the motion, permitting the amendment.

The statute to which the trial Judge referred was Section 111 of the Code of Criminal Procedure, Volume 1, Code of 1922. Therein it is provided that, "when any person shall be struck, wounded, poisoned, or otherwise injured in one

county, and dies thereof in another," an indictment thereon "found by jurors of either county shall be as good and effectual in law as if the stroke, wound, poisoning, or other injury had been committed and done in the county where the party shall die." It is further provided by that section that a "person guilty of such striking, wounding, poisoning, or other injury, and every accessory thereto, either before or after the fact, shall be tried in the county where such indictment shall be found.   *    *    *"

It was held in the case of the *State v. McCoomer*, 79 S. C., 65, 60 S. E., 237, that the act of the General Assembly, from whence this section comes, was constitutional; and that the offense is to be considered committed in both counties and triable in either. See, also, *ex parte Swygert*, 117 S. C., 94, 108 S. E., 261.

Two cases already decided by this Court sustain absolutely, in our opinion, the position of the appellant that there was error in the matters complained of by him.

We refer first to *State v. Coleman*, 17 S. C., 473. In that case the defendant, who was indicted for murder, was convicted of manslaughter. He moved in arrest of judgment because there was no allegation in the indictment of any place where the deceased died. His motion was refused, and he appealed. It is of interest to observe that one of the counsel for appellant was the present Chief Justice. Mr. Justice McIver wrote the opinion of this Court, composed at that time of himself, Chief Justice Simpson, and Associate Justice McGowan. In the opinion, this statement was made:

"The only question, therefore, presented by this appeal is whether the omission to state in the indictment the place where the deceased died is a fatal defect. There can be no doubt that such an omission would have been fatal at common law, and the question then is narrowed down to the inquiry whether there are any statutory provisions which render such an allegation unnecessary. The statute relied on for this purpose is the Act of 1859 (12 Stat. 822), incorporated into the Gen-

eral Statutes (Chap. 128, Sections 19, 20 and 21), as amended by the Act of December 21st, 1880 (17 Stat. 336)."

The statutes referred to are now Sections 108, 109, 110, and 111 of the Code of Criminal Procedure, enacted originally in 1859, and amended in 1880. They refer to the place of trial in the following cases : (1) Where the injury is within the limits and death beyond the limits of this state; (2) where the injury is beyond the limits and the death within the limits of this state; (3) where the parties to the homicide are in different counties at the time of the infliction of the injuries; and (4) where the injury is given in one county and the ensuing death occurs in another county. The last section (111) is the one to which Judge Sease evidently referred, and the one from which we have quoted heretofore.

Regarding those statutes, Mr. Justice McIver said this :

"It will be observed that these statutory provisions do not purport to make any change in the rules of criminal pleading, but are simply designed to prescribe a place of trial in certain cases, where, as the law then stood, it was at least doubtful as to where would be the proper place of trial. They do not declare in general terms that, no matter where the death ensues, the accused may be indicted and tried where the injury causing the death was inflicted, but they specify particularly that where death ensues in a particular place, from an injury inflicted in another place, then the accused may be indicted and tried in a certain place, and so on. We do not see, therefore, how these statutory provisions can be regarded as having the effect of altering the established rules of criminal pleading, especially in cases not falling within any of the classes provided for by these statutes." *State v. Coleman, supra.*

The judgment of the Circuit Court therein was reversed, and the motion in arrest of judgment was granted.

It would therefore appear that in the *Coleman case* it was positively determined that, even in the face of the statutes referred to, it was still absolutely necessary in this state, in an

indictment for murder, to allege the place of death of the deceased. The decision to that effect seems not to have been questioned since in this state. On the contrary, without citing them, all the cases in any way touching the point appear to confirm that holding. The decision in the *Coleman case* standing alone, however, would not be conclusive of the questions now before us, for the reason that it was rendered in 1882, prior to the legislative enactments relating to the sufficiency of indictments and amendments of same passed in 1887, now found in Sections 89, 90, 91, and 93 of the Code of Criminal Procedure.

An even stronger case in favor of appellant's contention is that of *State v. Blakeney,* 33 S. C., 111, 11 S. E., 637, decided in 1890, after the statutes as to indictments, mentioned above, had been enacted. In that case the defendants were charged with the crime of murder in Chesterfield County. The indictment alleged, properly, that the injuries were inflicted in Chesterfield County. There was at the trial some question as to the sufficiency of the allegation as to the place of death. After the jury had been sworn, the defendants moved to quash the indictment because it failed to allege the place of death of the deceased, but the motion was refused because it came too late under the terms of the Act of 1887, referred to. The Court allowed the solicitor to amend the indictment by inserting the express allegation that the death of the deceased occurred in Chesterfield County. On the appeal to this Court, it was held that the indictment was not defective, for the reason that the allegation as to the place of death, Chesterfield County, was sufficient even before the allowance of the amendment, and, for that reason, the judgment below was affirmed. We quote very fully from the opinion of Chief Justice Simpson, concurred in by Justices McIver and McGowan, what was held as to the necessity of alleging in an indictment for murder the place of death of the deceased, and the right to amend such indictment in that regard:

"If the indictment had been defective in the particular alleged by the appellant, to-wit, in failing to state the place of the death of the deceased, then we think the grounds of appeal would demand a reversal of the judgment below. We suppose that it can hardly be necessary to cite authority to the fact that it is absolutely essential in an indictment like that here that the place of the death of the party killed should be alleged therein, and that, in the absence of such allegation, such indictment is fatally defective, and should be quashed on motion made; and we think, further, that such a defective indictment is beyond the reach of amendment. True, under Section 5, p. 830, of the Act of 1887, much of the useless phraseology which characterized indictments in former times may be dispensed with, and omissions of mere forms may be cured by amendment; but this Act has neither dispensed with essential allegations, nor has it attempted to cure their omission by allowing amendments to that end. Indeed, we may say that we do not think that the General Assembly would have the power to provide for the amendment of indictments to the extent claimed here, and in a matter so vital as the place of the death of the party killed, which is absolutely necessary to be alleged in a jurisdictional point of view, and must be passed upon by the grand jury in accordance with the constitutional rights of the accused. We do not think, therefore, that the Act in question was intended to reach thus far.

"We concur, too, in the position that, had the indictment been defective in the matter complained of, that it would have been error to have allowed the trial to proceed on the indictment as amended, because, as contended, this would have jeopardized the accused upon an indictment not found by the grand jury, and in violation of his constitutional rights. So, too, for the same reason, there would have been error in refusing the motion in arrest of judgment."

So far as the decision in the *Blakeney case* bears upon the issues involved in the matter under review here, we find four

distinct holdings made in that decision: (1) That the statutes simplifying indictments, and permitting amendments thereto, have not had the effect of doing away with the necessity of having an indictment to contain all *essential* allegations of the offense sought to be charged; (2) that those statutes do not authorize the amendment of an indictment as to an *essential* allegation; (3) that, in an indictment for murder, the place of the death of the deceased party is an *essential* allegation; and (4) that the allegation as to the place of death is so *essential* that it cannot be amended.

A somewhat exhaustive research has failed to disclose any decision of this Court, since the time the *Blakeney case* was decided, which tends in any way to modify or weaken any one of the holdings there made. We have found no case which even refers to the determination as to the necessity of alleging in an indictment for murder the place of the death of the deceased party, nor to that other determination that an amendment of such allegation is prohibited. We take it, therefore, that those two holdings have been accepted for at least a third of a century without the slightest question. To strengthen this view, and to further establish the *Blakeney case* as accepted authority, we are reminded that in at least three other cases the *Blakeney case,* on certain holdings therein, has been cited with approval. See *State v. Faile,* 43 S. C., 52, 20 S. E., 798; *State v. Assmann,* 46 S. C., 554, 24 S. E., 673; *State v. Mc-Coy,* 98 S. C., 133, 82 S. E., 280.

It is to be conceded, of course, that the exact question before us at this time was not passed upon in the *Blakeney case,* or in any other of the cases we have mentioned. We observed particularly that in both the *Coleman* and the *Blakeney cases* the party who was killed died in the same county where the mortal blow was given. And such was not the fact, according to the proof, in the case at bar. The last clause of the last sentence of the last quotation we used from Mr. Justice McIver's opinion in the *Coleman case* made us wonder for awhile if

that distinguished jurist intended to indicate that, in cases where the death of the deceased took place in a county other than that where his injuries were received, the statutory provisions as to the place of trial in such cases might have brought about a change as to the rules of criminal pleading therein. The language referred to was this: "We do not see, therefore, how these statutory provisions can be regarded as having the effect of altering the established rules of criminal pleading, *especially in cases not falling within any of the classes provided for by these statutes.*" On further consideration, however, we were led to the conclusion that the cautious and wise Judge was only following his usual habit to decide only the question really before the Court without going into matters not up for decision. The italicized language in no way lessened the strong statement that the statutory provisions there referred to did not have "the effect of altering the established rules of criminal pleading."

Following the suggestion of the learned Circuit Judge, expressed, of course, without an opportunity to examine into the law thoroughly, we have considered the effect of the amendment allowed to be made on the rights of the defendant, and have sought to justify it upon the theory that it could not have injured him, but, on the other hand, that it protected him. In our investigation along this line, we ascertained that the *Blakeney case* had been cited often in the standard textbooks and in many reported cases. We discovered also that this question has been decided differently by the appellate courts of many of the states; the majority, however, appearing to be in line with the decision of the Supreme Court of Indiana, which has held in accordance with the views we hold. And that Court, speaking through one of its learned members, Justice Townsend, answered, as recently as 1923, to our complete satisfaction, the thought we had in mind, based upon the idea of Judge Sease. See *Brockway v. State,* 192 Ind., 656, 138 N. E., 88, 26 A. L. R., 1338.

In the *Indiana case,* Brockway was convicted of involuntary manslaughter on an indictment which alleged the venue of both the stroke and the death in Tippecanoe County, Ind. The proof showed the death of the alleged victim in the state of Ohio. We quote at length from the opinion of Mr. Justice Townsend. After calling attention to the provisions of the Constitution of Indiana, which are very much similar to our own, as to the rights of an accused person in criminal cases, the Justice said:

"The crime we are here talking about is a composite one. The stroke does not make the crime. The death does not make the crime. It is the composition of the two. Death must follow within a year and a day from the stroke, the injury being the cause of the death, or a contributing or an accelerating cause. Where there is an altercation between two individuals and an assault and battery committed, it may well be that the one inflicting the injury does not deny the assault, and the injury may be apparently slight and of a transient character, so that when the accused makes his defense the battle ground of the case is whether the assault was the cause or contributing cause of death. It thus becomes obvious that one of the most important things for the defendant to know, in order to prepare his defense, is the place of death, because he has a right to show that the alleged victim who died is not the real victim of his assault; or, if the real victim, that death did not result because of the assault, but from some other cause. How can he find out these things unless he is informed of the place of death, in order that he may get the evidence of witnesses who know the facts?

"We have a statute which provides that when a stroke is given in one county and death occurs in another, the jurisdiction to try the cause shall be in either county. The state therefore contends that when the accused is tried in the county of the stroke, the place of death is immaterial. That is to say, that the question is one of jurisdiction only. We think that it

is more than this. The affidavit or indictment must show jurisdiction. It must also charge the offense with sufficient certainty that the Court may know what judgment to pronounce, and with such certainty that it may be pleaded in bar of a subsequent prosecution for the same offense; and, further than this, with such certainty and particularity as to time and place of material averments that the defendant may prepare himself, get his witnesses, to meet the charge. Thus it will be seen that the question is not one of jurisdiction alone.  *  *  *

"The affidavit in the instant case does worse than fail to charge the place of death, for it lays a false place. It seems to us that this, to some extent, destroys the identity of the *corpus delicti.*"

Among the several authorities cited in support of the conclusion of the Indiana Court that the judgment against the appellant had to be reversed were the *Blakeney* and *Coleman cases, supra.*

The case of *Ball v. United States,* 140 U. S., 118, 11 S. Ct., 761, 767, 35 L. Ed., 377, is one of the leading cases on the subject under investigation. It was one of the authorities cited in the *Brockway case, supra.* The indictment charged the defendants with committing the assault on the deceased in the eatern district of the State of Texas, but failed to allege the place of death. Honorable William H. Taft, now the well-beloved and highly honored Chief Justice of the United States, appeared for the government as Solicitor General in that case, but he failed to convince the highest Court in the land that the indictment was not fatally defective. The victim did not die in the judicial district where the prosecution was instituted and the trial had and wherein the injuries were inflicted. Mr. Chief Justice Fuller, in reversing the judgment of conviction, said this:

"The accused is entitled to be informed of the nature and cause of the accusation against him, and the jurisdiction should not be exercised when there is doubt as to the au-

thority to exercise it. All the essential ingredients of the offense charged must be stated in the indictment, embracing with reasonable certainty the particulars of time and place, that the accused may be enabled to prepare his defense, and avail himself of his acquittal or conviction against any further prosecution for the same cause. Hence, even though these defendants might have been properly tried in the eastern district of Texas, if the fatal stroke were inflicted there, though the death occurred elsewhere, yet, nevertheless, the averment of the place of death would still remain essential."

We are forced to the conclusion that the learned presiding Judge committed error, as it seems he was fearful he was doing, when he permitted the indictment to be amended. It follows also, since the indictment without the amendment was at fatal variance with the proof on the essential allegation as to the place of the death of the deceased, that the motion for a directed verdict in favor of the appellant should have been granted. The holdings we have made, however, do not mean that the appellant is to be discharged from custody and allowed to go hence without day. Section 84 of the Code of Criminal Procedure is as follows:

"If a person, on his trial, be acquitted upon the ground of a variance between the indictment and the proof, or upon an exception to the form or substance of the indictment, he may be arraigned again on a new indictment, and tried and convicted for the same offense, notwithstanding such former acquittal."

Under that section, it is proper for the appellant to be held subject to the further order of the Court of General Sessions for Marion County.

It is the judgment of this Court that the judgment below be, and the same is hereby, reversed, and that the case be remanded to the lower Court for action in accordance with the views herein expressed.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Stabler, and Carter concur.