611 S.E.2d 901

**Herman WINNS, Respondent–Petitioner,**

v.

**STATE of South Carolina, Petitioner–Respondent.**

No. 25958.

Supreme Court of South Carolina.

Submitted Dec. 2, 2004.

Filed March 28, 2005.

Rehearing Denied May 6, 2005.

Capers G. Barr, III, of Barr, Unger & McIntosh, of Charleston, for respondent-petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Derrick K. McFarland, all of Columbia, for petitioner-respondent.

Chief Justice TOAL.

The post-conviction relief (PCR) judge vacated respondent-petitioner Herman Winns's conviction for murder, after finding that the indictment was defective because it failed to state the time and place of the victim's death. The PCR judge also ruled that Winns's claims regarding ineffective assistance of counsel lacked merit. This Court granted the State's petition for certiorari on the indictment issue and Winns's petition for certiorari on the ineffective assistance of counsel issues. After careful consideration, we dismiss Winn's petition for certiorari as improvidently granted on the ineffective assistance of counsel issues, and we reverse the PCR's judge's ruling on the indictment issue.

### FACTUAL/PROCEDURAL BACKGROUND

On a Friday afternoon, after having been laid off from his job earlier in the week, Winns went to St. Stephens, South Carolina, to visit some family and friends. Once there, Winns decided to buy some crack cocaine. A friend suggested that Winns visit John Arthur Mouzon, the victim, who was a known drug dealer and lived in Belangia Apartments. Winns and Mouzon had never met before. At approximately 1:30 p.m., Winns went to Mouzon's apartment and bought $50 worth of crack cocaine and smoked it in Mouzon's apartment.

After Winns spent all of his money, he asked Mouzon for a ride to Winns's aunt's house. Winns's aunt gave him $20, which he used to buy more crack cocaine. Although Winns went to a local convenience store at least four or five times to purchase beer, and visited other people in the area, he spent most of the afternoon and evening at Mouzon's apartment. Winns eventually ran out of money again, and asked Mouzon if he would give Winns some crack cocaine anyway, and Mouzon did.

Winns testified that later that night, he and Mouzon were sitting on the couch when Mouzon put his hand on Winns's thigh. Because of this, Winns decided to leave. But before leaving, Winns went into the bathroom, and when he came out, Winns found Mouzon lying on the bed, naked, with a sheet pulled up to his waist. Winns testified that, instead of leaving right away, he walked toward the bed to get more crack cocaine. When Winns was by the bed, Mouzon grabbed

Winns by the groin, pulled him onto the bed, and told him that he needed to pay him back for the crack he had given him. Winns reacted by hitting Mouzon on the head several times with an iron [1] until Mouzon released his grip.

At approximately 3:40 a.m., Winns left the apartment with the iron in his hand, eventually throwing it into the bushes. Later, at approximately 7:30 a.m., Mouzon's cousin came to the apartment and found Mouzon lying on the bed. She said he was cold and did not have a pulse. The police arrived later that morning and determined that Mouzon had been dead for a while. That afternoon, Winns turned himself in and admitted that he struck Mouzon with the iron.

At trial, the central issue was whether Winns acted in self-defense or whether his actions constituted manslaughter or murder. The jury found Winns guilty of murder and the judge sentenced Winns to life imprisonment. Winns appealed and this Court affirmed his conviction. *State v. Winns,* Mem. Op. No. 00–MO–078 (S.C. Sup.Ct. filed May 26, 2000). Winns applied for PCR.

After a hearing, the PCR judge found that the indictment was flawed because it did not state the time and place of the victim's death. As a result, the judge vacated the conviction, finding that the trial court did not have subject matter jurisdiction. The judge also ruled that Winns's ineffective assistance of counsel claims lacked merit.

The State petitioned this Court for certiorari on the indictment issue, and Winns petitioned on the ineffective assistance of counsel issues. This Court granted both petitions. But after careful consideration, we dismiss certiorari as improvidently granted on the ineffective assistance of counsel issues, and address only the following issue, raised by the State:

Did the PCR court err in vacating Winns's conviction on the basis that the indictment failed to state the time and place of the victim's death?

### LAW/ANALYSIS

#### STANDARD OF REVIEW

This Court gives great deference to the PCR court's findings of fact and conclusions of law. *Caprood v. State,* 338

---

1. The iron was the type heated by a stove and used for ironing clothes.

S.C. 103, 109, 525 S.E.2d 514, 517 (2000). On review, a PCR judge's findings will be upheld if there is any evidence of probative value to support them. *Id.* at 109–110, 525 S.E.2d at 517.

To establish a claim that counsel was ineffective, a PCR applicant must show that counsel's representation fell below an objective standard of reasonableness, and but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Johnson v. State,* 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## INDICTMENT

The State argues that the PCR judge erred in ruling that the trial court lacked subject matter jurisdiction because the indictment failed to state the time and place of the victim's death. We agree.

South Carolina statutory law provides the following:

Every indictment for murder shall be deemed and adjudged sufficient and good in law which, in addition to setting forth the time and place, together with a plain statement, divested of all useless phraseology, of the manner in which the death of the deceased was caused, charges that the defendant did feloniously, wilfully and of his malice aforethought kill and murder the deceased.

S.C.Code Ann. § 17–19–30 (1985).

Moreover, this Court has held that an indictment for murder is sufficient "if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and if an acquittal or a conviction thereon may be pleaded as a bar to any subsequent prosecution." *Joseph v. State,* 351 S.C. 551, 561, 571 S.E.2d 280, 285 (2002) (citing *State v. Owens,* 346 S.C. 637, 648, 552 S.E.2d 745, 751 (2001)). In addition, the court must look at the indictment with a practical eye in view of the surrounding

circumstances. *State v. Gunn*, 313 S.C. 124, 130, 437 S.E.2d 75, 78 (1993). Whether an indictment could be more certain or definite is irrelevant. *State v. Knuckles*, 354 S.C. 626, 628, 583 S.E.2d 51, 51–52 (2003).

In the present case, the PCR judge ruled that the trial court lacked subject matter jurisdiction because the indictment did not allege the time and place of the victim's death. Accordingly, the PCR judge vacated Winns's conviction. In support of this ruling, the PCR court cited *State v. Rector*, 158 S.C. 212, 155 S.E. 385 (1930). In that case, the Court held that the use of the words "then and there" sufficiently stated the time and place of death because those terms clearly referred back to the only date and place listed in the indictment. *Id.* at 216, 155 S.E. at 387.

In the case at hand, the indictment reads as follows:

That HERMAN WINNS did in Berkeley County on or about October 4, 1997 while at apartment # 5 at Belangia Apartments in the town of St. Stephen, South Carolina, with malice aforethought, strike John Arthur Mouzon several times in the head with a metal object, said blows to the head being the proximate cause of the death of John Arthur Mouzon. This action being in violation of § 16–3–10, South Carolina Code of Law (1976), as amended.

We hold that the PCR court erred in finding the indictment defective. Although the indictment did not state that Mouzon did "then and there" die, the only logical reading of the indictment is that on October 4, 1997, Winns hit Mouzon in the head several times, at the Belangia Apartments, and Mouzon died either at the time he was attacked or soon thereafter. The indictment provides the time of death (October 4, 1997) and the place of death (the Belangia Apartments, St. Stephens, South Carolina). Had the victim been found in a different location or on a different date, the indictment, as written, may have been insufficient. But because Mouzon was found dead in his bed, on the same day and in the same place where Winns struck him, and because the indictment explained that the blows to the head were the "proximate cause of death," we find that the indictment states the offense of murder with sufficient certainty and particularity such that

Winns knew what he was being called upon to answer.[2] Accordingly, the indictment was not defective.

## CONCLUSION

For the foregoing reasons, we REVERSE the PCR court's ruling vacating Winns's conviction, and hold that the indictment was sufficient to confer subject matter jurisdiction.

MOORE, WALLER and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES:

I respectfully dissent. In reviewing the sufficiency of an indictment, we look solely to the words used therein and not to the evidence adduced at trial. Here, the post-conviction relief (PCR) judge, relying upon this Court's long-established precedent, found the murder indictment invalid because it failed to sufficiently allege the time and place of the victim's death as required by S.C.Code Ann. § 17–19–30 (1985). I agree, and would therefore affirm.

The "time and place of death" requirement found in § 17–19–30 merely codifies the common law. *State v. Rector*, 158 S.C. 212, 155 S.E. 385 (1930). Where the indictment references the place and date of the assault, and alleges that the victim died "then and there," this requirement has been satisfied. *Id.; see also State v. Platt*, 154 S.C. 1, 151 S.E. 206 (1930); *State v. Blakeney*, 33 S.C. 111, 11 S.E. 637 (1890). The present indictment alleges the time and place of the assault, but is silent on the time and place of the victim's death. As the Court said in *State v. Rector*:

The crime of murder is a composite one. It includes the assault committed upon a person ... and the resulting

2. We note that our decision in this case is consistent with the recently published opinion of *State v. Gentry*, Op. No. 25949 (S.C. Sup.Ct. filed March 7, 2005), which explains that indictments are notice documents, not documents required to confer subject matter jurisdiction. *See* S.C. Const. art. V, § 11 (providing that circuit courts are "general trial court[s] with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law").

death from that assault. The State must prove not only the assault and the death occurring from it, but the time of the assault and the time of the death, as time is recognized in the law. In addition, the state [sic] must prove the place of the assault and the place of death. These necessary elements of the crime of murder must not only be proved, before a person accused may be lawfully convicted, but they must be alleged in the indictment returned against the accused by the grand jury. The provisions of the Constitution, recognizing and following the principles of the common law, require the indictment to contain allegations to those effects.

The PCR judge correctly vacated respondent-petitioner's murder conviction, there being no valid indictment charging him with that offense. In light of this, there is no need to address the allegations of ineffective assistance of counsel.