7963

## STATE v. BAZEN.

1. JUROR.—Where there is no showing in the record of the alleged disqualification of a grand juror, refusal to quash indictment on ground that it was found by illegal grand jury will not be reviewed.
2. IBID.—Disqualification of only one grand juror will not invalidate an indictment, unless it appear that the jury was composed of only twelve men.

Mr. JUSTICE HYDRICK *dissents.*

3. CHARGE.—Where defense puts up no evidence, and the only reason-
able inference to be drawn from the testimony is that insulting
language was used by defendant to deceased in an angry, hostile
manner and that such language did actually bring on a difficulty, it
is not a charge on the facts for the Court to assume these circum-
stances and to charge the law applicable.
Mr. JUSTICE HYDRICK *dissents.*

Before GARY, J., Florence, March, 1910, term.    Affirmed.

Indictment against R. L. Bazen.    Defendant appeals.

*Messrs. J. W. Ragsdale, R. E. Whiting* and *Leroy Lee,*
for appellant.    *Messrs. Ragsdale* and *Whiting* cite: *There
must be a lawful grand jury:* 7 Rich. 338; art. V, sec. 22,
Con.; 59 S. C. 206; 54 S. C. 127, 145; 25 Stat. 237; Cool.
Con. Lim. 89, 92; 28 S. C. 521; 67 S. C. 318; 9 Fla. 9.
*Appellant cannot show prejudicial error in grand jury room:*
17 Ency. 1291, 1295; 2 S. C. 356; 4 Wig. on Ev. 2361; 1
Whar. Am. Cr. L., sec. 509; 1 Whar. Ev., sec. 601; 62 Ala.
383; 30 Tex. 428; 146 Ill. 175; 6 A. & E. 236; 60 Ga. 145;
90 Md. 145; 28 L. R. A. 35.    *If one juror is illegal the pre-
sumption obtains the bill is unlawful:* 109 U. S. 65; 52 L. R.
A. 83; 12 Fla. 566; 3 Utah 489; 10 Ark. 71; 34 Miss. 614;
33 Miss. 356; 2 Pearson 466; 28 Tex. App. 27; 12 Am. St.
R. 710; 34 Am. R. 704; 21 Am. R. 265.    *Charge was on
the facts:* 85 S. C. 278; 28 S. C. 15; 47 S. C. 513; 85 S. C.
265.    *Use of opprobrious words:* 75 S. C. 510; 78 S. C. 96;
85 S. C. 107.    *Whether they provoke a difficulty is for jury:*
111 Ala. 11; 103 Ala. 12; 19 Ky. L. R. 413; 51 S. W. 250;
50 L. Ann. 1171; 37 Kan. 420; 91 Ala. 64.

*Solicitor Walter H. Wells,* contra, cites: *Over age is not
disqualification absolute of juror:* 24 Cyc. 206; 36 S. C.
515; 34 S. C. 16.    *Appellant must show prejudice:* 56 S.
C. 379.

July 8, 1911.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.    The exceptions should be overruled and the judgment affirmed.

There was no error in refusing to quash the indictment. First, because there is nothing in the record showing that proof was made of the alleged disqualification of the grand juror.    *State* v. *Brownfield,* 60 S. C. 514, 39 S. E. 2.    Second, because the disqualification of a single grand juror will not invalidate an indictment, unless it appears that the grand jury was composed of only twelve men.    It is not disputed that the grand jury was composed of eighteen, including the alleged disqualified juror.    *State* v. *Rafe,* 56 S. C. 379, 34 S. E. 660; *State* v. *Graham,* 79 S. C. 116, 60 S. E. 431.

There was no error in the charge considered as a whole and in the light of the undisputed facts.    No testimony was offered for the defense and the only reasonable inference from the State's testimony was that the insulting language was used by defendant to the deceased in an angry, hostile manner, and that such language did actually bring on the difficulty.    Hence there was no error for the Court to assume these circumstances and charge the law applicable.    It is not a charge on facts to assume as established those facts which are the only inferences that can be drawn from the testimony.

Under no view of the law and the testimony could a verdict more favorable to defendant be properly rendered. Hence there should not be a new trial.

Judgment affirmed.

MR. JUSTICE HYDRICK, *dissenting.*    The defendant was tried for the murder of Lofton E. Poston, and was convicted of manslaughter and sentenced to three years at hard labor on the public works of the county, or in the penitentiary.

The first ground of appeal alleges error in the refusal of the Circuit Court to quash the indictment on the ground that

the foreman of the grand jury, which found the bill, was a disqualified juror, being above the age of sixty-five years. The record contains no other statement than that the motion was made on that ground before the petit jury was empanelled, and that it was refused. It was held in the case of *State* v. *Rafe,* 56 S. C. 382, 34 S. E. 660, that, before such an objection can avail appellant, he must make it appear that he was prejudiced by the fact that the juror was disqualified; and it is there said that if it appeared that every grand juror on the panel was disqualified, or that the bill was found by a grand jury composed of only twelve men, one of whom was disqualified, the Court would necessarily conclude that the bill was not found by a legal grand jury. Upon the principle announced in *State* v. *Rafe,* the case of *State* v. *Graham,* 79 S. C. 116, 60 S. E. 431, was decided. I desire to express my dissatisfaction with the principle stated in those cases, because it requires an impossibility, since, on grounds of public policy, no inquiry into the proceedings of a grand jury is permissible. According to those cases, there might be six disqualified jurors on the panel, each of whom in fact argued and voted in favor of finding a true bill, while six of the qualified jurors argued and voted against such action; yet, as that fact could not be shown, and because there were twelve qualified jurors on the panel, the bill could not be successfully assailed. Without entering upon any elaboration of the reasons, it seems to me that those decisions practically annul a mandatory provision of the Constitution, to wit, sec. 22 of art. V, which says: "The grand jury of each county shall consist of eighteen members, twelve of whom must agree in a matter before it can be submitted to the Court. * * * Each juror must be a qualified elector under the provisions of this Constitution, between the ages of twenty-one and sixty-five years and of good moral character."

It appears from the testimony that what is called a box party was given at a neighborhood schoolhouse one night in

January, 1910. The teacher, Miss Godwin, requested deceased to take charge of affairs, keep order, and attend to the finances. A cake was offered for sale to the highest bidder, and it was knocked down to the defendant, who, for some reason, not clearly stated in the testimony, refused to take it and pay for it. Deceased insisted on his paying for it, and suggested that, if he did not have the money, he could borrow it from some of his friends. During the colloquy, defendant became angry and began to curse, and called deceased a "God damn son of a bitch," and asked him to go out to the road with him and settle it. The teacher went to defendant and requested him to leave. He said he would leave, but he was not done with it, as he had not been treated fairly. Deceased went out either with him or about the same time, and hot words were passed between them on the outside,—the defendant again calling deceased a "God damn son of a bitch." A friend of deceased's interfered and induced him to go back into the house, where he remained some twenty or twenty-five minutes, and appeared to one of the witnesses to be in a normal frame of mind, and not to be very angry with defendant, so that the witness thought the difficulty was over with, and there would be no further trouble. After remaining in the house some twenty or twenty-five minutes, deceased again went out in company with two friends. At this point,— when deceased went out the second time,—the testimony is not entirely clear upon the question whether the defendant immediately and again called deceased a son of a bitch, or referred to him as such, before anything was said by Arthur Poston, who was with deceased, or by the deceased himself, or whether Arthur Poston or the deceased first referred to the previous application of the epithet to deceased. Upon that point, Arthur Poston testified that, as deceased went out, defendant said: "There comes the God damn son of a bitch I want to see." Deceased said: "Where is the man and who is the man that cursed

me for a son of a bitch?" Defendant said: "Here he is, I am the man that cursed you for a son of a bitch." Thereupon, they ran together, and after passing a few blows, deceased ran into the house where it was found that he had received a stab in the neck of which he died in a few minutes. D. D. Prosser testified that, when deceased and Arthur Poston went out, Arthur Poston said: "Lofton, some one in this crowd (referring to a crowd standing on the outside) cursed you." Deceased said: "What one in this crowd cursed me?" Defendant stepped out of the crowd and said: "I am the man that done it." Still another witness, McIver Poston, testified that deceased said, when he came out: "Where is the man that cursed me for a son of a bitch?" That defendant replied: "I am the man that cursed you for a son of a bitch." This witness said, also, that defendant said nothing, until deceased asked the question.

Defendant offered no testimony but relied on the plea of self-defense. Upon the law of that defense, the Court charged, in part, as follows: "The law will not permit one citizen to say to another, 'you are a damn son of a bitch,' and, if he resents it, to strike him to his death. The law will not permit him to say he killed him in self-defense, because the law says you did that which was reasonably calculated to provoke a difficulty, and the law is, that where one does an act which is calculated to bring on an encounter, or bring on a difficulty, and he killed under those circumstances, the law will not allow him to shield the killing under the plea of self-defense, on the wholesome principle that he was not without fault." The appellant contends that the charge above quoted was not only a charge upon the facts, but, also, that it was erroneous in failing to charge that opprobrious language used by one to another will not deprive the party using it of the right of self-defense, unless it is not only such that a reasonable person would expect it to provoke a difficulty, but also that it actually did contribute to bringing on the difficulty.

The provision of the Constitution prohibiting Judges from charging juries in respect to matters of fact has been so frequently and so fully construed and explained that the question here presented requires only the application of settled principles. One of these is that a Judge must not, directly or indirectly, give the jury any intimation of his opinion on any material fact in issue. *State* v. *Addy,* 28 S. C. 14, 4 S. E. 814; *State* v. *Johnson,* 85 S. C. 265, 67 S. E. 453, and cases cited. In the language quoted, the Judge plainly told the jury that, if one man calls another a damn son of a bitch, he does that which is reasonably calculated to provoke a difficulty, and deprives himself of the right of self-defense. This was error; for, in so charging, the Judge decided for the jury a material issue of fact. The Court should not have said, as matter of law, that the application of that epithet by one to another would, under all circumstances, be reasonably expected to provoke a difficulty. Whether it would or not would depend upon a variety of circumstances,—such as the relation of the parties, the time and place and manner, including the tone of voice and expression of countenance. The Court recognized this principle in *State* v. *Rowell,* 75 S. C. 510, 56 S. E. 23, when it said, as to language used by defendant: "The defendant's testimony as to the language used by him, and his manner in using it, made an issue of fact as to whether he had just reason to suppose his language to the deceased would probably result in a personal difficulty." Whatever we may say or think of the impropriety of persons using such harsh and, ordinarily, offensive epithets toward each other, it is, nevertheless, true that they sometimes do it in jest, when no offense is meant or taken. Moreover, the question whether the use of that epithet did or did not actually provoke the fatal encounter was one of fact, which should have been, but was not, submitted to the jury. The fact is that it was used several times during the first altercation of words, without provoking a personal encounter. There was, therefore,

ground for reasonable difference of opinion as to whether it did, in fact, provoke the fatal encounter; and, if so, whether that encounter was immediately brought on by the defendant again applying the epithet to deceased, when he came out of the schoolhouse the second time, or by Arthur Poston's calling deceased's attention to the fact that defendant had, either then or previously, applied the epithet to him, or by the deceased himself recurring to the previous use of the epithet; and if the last, whether from the time that had elapsed, deceased was not at fault in renewing the difficulty, for surely the law would not allow him to wreak vengeance upon defendant for the previous insult after the lapse of sufficient time for him to cool.

The charge complained of was also erroneous in that it failed to instruct the jury that, to deprive one of the right of self-defense, opprobrious language used must, besides being such as should reasonably be expected to provoke a difficulty, actually have contributed toward bringing on the difficulty; for, obviously, no matter how offensive language may be, if it, in fact, does not bring on, or contribute to bringing on, the difficulty, it should not deprive him who uses it of his right of self-defense.   In *State* v. *Rowell, supra,* the Court stated the true rule to be "that the plea of self-defense is not available to one who uses language so opprobrious that a reasonable man would expect it to bring on a physical encounter, and which did actually contribute to bringing it on."